1  Audra M. Mori, Bar No. 162850
   AMori@perkinscoie.com
2  Katherine M. Dugdale, Bar No. 168014
   KDugdale@perkinscoie.com
3  PERKINS COIE LLP
   1620 26th Street
4  Sixth Floor, South Tower
   Santa Monica, CA  90404-4013
5  Telephone:  310.788.9900
   Facsimile:  310.788.3399
6
7  Susan Fahringer, *pro hac vice pending*
   SFahringer@perkinscoie.com
8  Charles C. Sipos, *pro hac vice pending*
   CSipos@perkinscoie.com
9  PERKINS COIE LLP
   1201 Third Avenue, Suite 4800
10 Seattle, WA  98101-3099
   Telephone:  206.359.8000
11 Facsimile:  206.359.9000
12 Attorneys for Plaintiff
   Nintendo of America Inc.

NOTE: CHANGES MADE BY THE COURT

13              UNITED STATES DISTRICT COURT
14              CENTRAL DISTRICT OF CALIFORNIA
15

16 NINTENDO OF AMERICA INC., a          Case No. CV 09-4203 JFW (PLAx
17 Washington corporation,
                                        ORDER GRANTING PRELIMINARY
18              Plaintiff,              INJUNCTION

19       v.
                                        Hon. John F. Walter
20 DANIEL MAN TIK CHAN, an
   individual, d/b/a www.dselite.com,
21 www.thedsdeals.com,
   www.inspiretech.com, Inspire
22 Technologies, and Inspiretech
   Electronics; and INSPIRE
23 ELECTRONICS, INC.;

24              Defendants.
25

26       1.     Plaintiff Nintendo of America Inc. ("NOA") moved for a preliminary

27 injunction pursuant to Federal Rule of Civil Procedure 65 and 17 U.S.C. §§ 1203

28 and 502, to enjoin Defendants from importing, marketing, or trafficking in products

1  or devices that are primarily designed, and have only limited commercially

2  significant purpose other than, to circumvent the technological security measures in

3  Nintendo's DS video game systems (which include the Nintendo DS, Nintendo DS

4  Lite, and Nintendo DSi) (collectively, the "Nintendo DS").  The accused devices

5  are also marketed for use in circumventing the technological security measures of

6  the Nintendo DS, and include products that are marketed and sold under the brand

7  names AceKard, AceKard 2 for DSi, DSTT, DSTTi, DS Xtreme, Edge DS, EZ

8  Flash, EZ Flash Vi, iTouch DS, M3 DS Real, N5 Revolution, ND1 Revolution, R4

9  DS Revolution, R4DS SDHC, R4i SDHC, and SuperCard DS One.  The accused

10  devices are collectively referred to herein as "Game Copiers."

11       The Court, having considered NOA's Motion and supporting Memorandum

12  and Declarations, the Complaint, and the other records on file in this matter, and

13  good cause appearing therefore, hereby **GRANTS** NOA's Motion for Preliminary

14  Injunction.  NOA is likely to succeed in showing that Defendants' importation,

15  marketing, and sale of Game Copiers infringes NOA's intellectual property rights

16  and violates the Digital Millennium Copyright Act, 17 U.S.C. §1201 *et seq.*

17  ("DMCA").  It appears to the Court that the following Preliminary Injunction is

18  necessary to ensure that NOA does not suffer irreparable harm pending trial of this

19  action.

20                    **<u>BACKGROUND</u>**

21       2.     NOA is a Washington corporation headquartered in Redmond,

22  Washington.  NOA is a wholly-owned subsidiary of Nintendo Co. Ltd. ("NCL"), a

23  Japanese company headquartered in Kyoto, Japan (collectively, NOA and NCL are

24  referred to herein as "Nintendo").

25       3.     Defendant Daniel Man Tik Chan (aka Morjn Chan or Morgan Chan) is

26  an individual who resides in this District.  Defendant Chan owns or serves as

27  President or CEO of Defendant Inspire Electronics, Inc.  Defendant Chan also does

28  business as Inspire Technologies, Inspiretech Electronics, www.dselite.com,

1  www.thedsdeals.com, and www.inspiretech.com.  Defendant Chan is engaged in

2  the business of importing, marketing, and trafficking in Game Copiers, and

3  personally benefits from those sales.

4        4.    Defendant Inspire Electronics, Inc. ("Inspire Electronics") is a

5  corporation with an address of 20819 Currier Rd., Suite 200, Walnut, California.

6  Inspire Electronics does business in this District and on the Internet as

7  www.inspiretech.com, www.dselite.com, and www.thedsdeals.com, and is engaged

8  in the business of importing, marketing, and trafficking in, among other things,

9  Game Copiers.

10        5.    The Defendants presently market and traffic in Game Copiers,

11  including without limitation AceKard, AceKard 2 for DSi, DSTT, DSTTi, Edge

12  DS, EZ Flash, EZ Flash Vi, iTouch DS, M3 DS Real, N5 Revolution, ND1

13  Revolution, R4 DS Revolution, R4DS SDHC, R4i SDHC, and SuperCard DS One.

14        6.    Each of the Defendants is an agent of the other.

15        7.    Defendant Inspire Electronics is the alter ego of Defendant Chan.

16        8.    Defendant Chan owns, operates, or otherwise controls Defendant

17  Inspire Electronics, personally participated in or had the right and ability to direct

18  and control the wrongful conduct alleged in this Complaint, and derived direct

19  financial benefit from that wrongful conduct.

20        9.    NOA is likely to succeed in showing the following.

21

22                  **NINTENDO AND ITS PRODUCTS**

23        10.    Nintendo video game systems (such as the Nintendo DS, Nintendo DS

24  Lite, Nintendo DSi, Game Boy, and Wii) and Nintendo games and characters (such

25  as Super Mario Bros., Mario Kart, Pokémon, Donkey Kong, and Zelda) are well-

26  known and popular.

27        11.    The Nintendo DS video game systems are proprietary dual-screen

28  handheld portable video game systems featuring a clamshell design with two LCD

1  screens inside, the bottom one a touchscreen.  Every version of the Nintendo DS
2  has enjoyed immense popularity.  A user plays a video game on the Nintendo DS
3  by inserting an authorized game card into the Nintendo DS for game play.  NOA
4  does not authorize the copying or downloading of Nintendo DS Games onto
5  devices, such as Game Copiers, that mimic authorized Nintendo DS Game Cards
6  and bypass the security measures that protect the Nintendo DS.  NOA does not
7  authorize Nintendo DS Games to be copied onto personal computers or to be
8  downloaded from personal computers to devices like Game Copiers.

9          12.    Nintendo and its authorized licensees have created and published many
10  popular video games specifically and exclusively for play on Nintendo video game
11  systems (software games created by Nintendo and its authorized licensees for the
12  Nintendo DS are collectively referred to herein as "Nintendo DS Games").
13  Nintendo DS Games can take years and millions of dollars to develop.  NOA holds
14  copyrights in and to Nintendo video game systems and many Nintendo DS Games.

## NINTENDO'S EFFORTS TO PROTECT
## ITS INTELLECTUAL PROPERTY RIGHTS

17          13.    The popularity of the Nintendo DS has made Nintendo the victim of
18  intellectual property pirates, who benefit from Nintendo's innovation and
19  investment by making unauthorized copies of Nintendo DS Games, or by creating
20  (and profiting from) the means by which others can play pirated Nintendo DS
21  Games on Nintendo video game systems.  Game Copiers are one of the most
22  popular ways to play pirated Nintendo DS Games on the Nintendo DS.
23
24          14.    Illegal copying of video game software is an international problem of
25  enormous proportion and great financial consequence for Nintendo.  Nintendo has
26  taken many steps to halt the illegal copying, marketing, sale, and distribution of
27  Nintendo DS Games, including registration of the intellectual property rights in and
28  to its video game systems and software, legal actions to stop individuals and

14372-0904/LEGAL15703945.1

companies from trafficking in Game Copiers, and security measures built into the video game systems themselves.

15.     As to the Nintendo DS, the security employed by Nintendo includes both design-based and technological measures.  Nintendo designed the Nintendo DS so that it will play only game cards that have a particular shape, with unique external geometry and electrical connections.  The technological measures contained in the Nintendo DS implement a process by which commands and data are exchanged between the Nintendo DS and the game card that is inserted into the Nintendo DS for play.  During the operation of the Nintendo DS security system and the game play that occurs if the security measures are passed, multiple copyrighted programs are repeatedly accessed and copied.

16.     The technological measures of the Nintendo DS ensure that even if a user inserts into the Nintendo DS a game card that fits perfectly into the uniquely-shaped Nintendo DS card slot, unless the game card also has the software necessary to pass (or to circumvent) the Nintendo DS technological security measures, the game card cannot be played on the DS.

## DEFENDANTS' INFRINGING ACTIVITIES

17.     The Game Copiers that Defendants market and traffic in enable those who use them to download games to portable memory storage devices and to circumvent the technological measures employed by Nintendo to control access to its copyrighted works and to protect its rights as a copyright owner.

18.     Game Copiers typically employ (1) a game card (referred to herein as the "Game Copier Card") that is substantially the same shape, and has substantially the same electrical connection configuration, as Nintendo's proprietary Nintendo DS Game Cards, so that a Game Copier Card fits perfectly in the Nintendo DS and resembles an authorized Nintendo DS Game Card; and (2) a memory device that

1  can hold multiple pirated Nintendo DS Games and that is inserted into the Game

2  Copier Card for game play.

3        19.    When Game Copiers are used as Defendants instruct, they bypass

4  Nintendo's technological security measures and gain the same access to the

5  Nintendo DS, and to certain of NOA's copyrighted programs, as an authorized

6  Nintendo DS Game Card would have.

7        20.    Because Game Copier cards are specifically designed to accommodate

8  portable memory devices that hold enormous amounts of data, hundreds of pirated

9  games may be downloaded onto just one Game Copier card, enabling the user to

10  play any of these pirated games on a Nintendo DS.

11        21.    Nintendo has never authorized any Game Copiers, and the specific

12  brands of Game Copiers sold by Defendants were not authorized by Nintendo or on

13  its behalf.

14  **CONCLUSIONS OF LAW**

15        22.    This Court has subject matter jurisdiction over the claims in this action

16  and personal jurisdiction over the parties, and venue is proper in this Court.

17        23.    The Nintendo DS security system is a technological measure that

18  effectively controls access to a copyrighted work under sections 1201(a) and

19  1201(b) of the DMCA, 17 U.S.C. 1201 et seq.  The Nintendo DS security system is

20  a process that includes repeated transfers of information to gain access to the IPL

21  and Boot Code programs, and to gain access to any copyrighted Nintendo DS Game

22  for play on the Nintendo DS.  The technological measures in the Nintendo DS

23  control access to NOA's copyrighted works.

24        24.    Game Copiers defeat the control over access to NOA's copyrighted

25  works that is exercised by these technological measures.  Game Copiers are

26  designed to precisely mimic the shape and electrical connections of an authorized

27  Nintendo DS Game Card.  Game Copiers were designed for the primary purpose of

28

1    bypassing the technological measures of the Nintendo DS, and have only limited

2    commercially significant purpose other than to achieve such circumvention.

3          25.     Absent an injunction NOA will suffer irreparable injury.  The DMCA

4    violations and copyright infringement induced by Defendants' Game Copiers cause

5    NOA great harm.  Just one Game Copier enables the use of portable memory with

6    storage capacities that allow the Game Copier to act as a vehicle to play hundreds

7    of copyrighted Nintendo DS games.  The sale of just a single Game Copier enables

8    the user of that device to engage in infringement of NOA's copyrighted software on

9    a massive scale.

10         26.     Game Copiers harm NOA's goodwill, detract from NOA's consumer

11    base, and enable widespread illegal and undetectable copying.  For a variety of

12    reasons, including the scope and the underground nature of the intellectual property

13    infringement involved, damages are an inadequate remedy.

14         27.     Unless Defendants' infringement is immediately enjoined, others will

15    be encouraged to import, market, and traffic in Game Copiers, which will accelerate

16    and exacerbate the harm to Nintendo's intellectual property rights, the damage to

17    Nintendo's position in the marketplace, and the harm to Nintendo's reputation.

18         28.     NOA therefore has shown a combination of probable success on the

19    merits and the possibility of irreparable injury if relief is not granted; or the

20    existence of serious questions going to the merits and that the balance of hardships

21    tips sharply in its favor.

22                     **PRELIMINARY INJUNCTION**

23        IT IS HEREBY ORDERED that pending trial in this action, Defendants,

24    their officers, agents, servants, employees, attorneys, any persons involved in the

25    operation of the websites http://www.TheDSDeals.com, http://www.DSElite.com,

26    and http://www.inspiretech.com, and any other persons acting in active concert or

27    participation with any of them who receive actual notice of this Preliminary

28    Injunction, be, and hereby are, immediately enjoined and restrained from:

a)   importing, manufacturing, offering to the public, providing, selling, using, or otherwise trafficking in the following products:  AceKard, AceKard 2 for DSi, DSTT, DSTTi, Edge DS, EZ Flash, EZ Flash Vi, iTouch DS, M3 DS Real, N5 Revolution, ND1 Revolution, R4 DS Revolution, R4DS SDHC, R4i SDHC, and SuperCard DS One;

b)   importing, manufacturing, offering to the public, providing, selling using or otherwise trafficking in any technology, product, service, device, component or part thereof (including Game Copiers), that (i) is primarily designed or produced to circumvent a technological measure that effectively protects NOA's rights as a copyright owner, or controls access to any work to which NOA holds a registered copyright; or (ii) is marketed by Defendants or others acting in concert with them for use in circumventing a technological measure that effectively protects NOA's rights as a copyright owner, or controls access to any work to which NOA holds a registered copyright;

c)   exporting, shipping, transferring, returning, destroying, concealing or otherwise moving, storing or disposing of any Game Copier, and

d)   exporting, transferring, destroying, deleting, modifying, concealing, or spoliating any Document or record relating to Defendants' importation, sale, marketing, or other trafficking in Game Copiers ("Document" includes papers, supplier names and addresses, shipment records, books of accounts, receipts, specifications, packaging and containers, and other hard copy business records as well as all electronic records such as computer tapes, computer disks, emails, and other electronic data).  Defendants must immediately suspend any automated processes or document retention protocols that would result in the loss or destruction of any such Document.

1    IT IS HEREBY ORDERED that NOA shall post a bond in the amount of

2   $50,000 to secure payment of any damages sustained by Defendants if they are later

3   found to have been wrongfully enjoined.

4

5

6    DATED this 21st day of July, 2009.

7

8    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14372-0904/LEGAL15703945.1